**Earl WARREN, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 90–235.

Supreme Court of Wyoming.

June 5, 1992.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, David Gosar, Appellate Counsel, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Jennifer Gimbel, Senior Asst. Atty. Gen., Larry M. Donovan, Senior Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

THOMAS, Justice.

The major issue that must be resolved in this case is whether the inclusion in the instruction on the elements of aggravated assault and battery of the phrase, "a deadly weapon, to wit: shoes ...," provided an opportunity for the jury to invoke an impermissible presumption. Other issues are urged with respect to the right to an instruction on the lesser included offense of simple battery, claimed to present Earl Warren's (Warren) theory of the case; error in not severing Warren's trial from joint trial with other defendants; and the contention that the evidence was not sufficient to sustain the verdict. We hold that no error occurred in connection with Warren's trial, and the judgment and sentence entered by the district court is affirmed.

In his Brief of Appellant, Warren states these issues:

I.   Did the trial court err by refusing to give an instruction on "simple" battery?

II.   Did jury instruction No. 9 create an impermissible irrebuttable presumption on the deadly weapon element of aggravated assault and battery?

III.   Did failure to instruct the jury on "simple" battery deny appellant's right to have his theory of the case presented to the jury?

IV.   Was plain error committed by not severing the appellant's trial from the trial of the other defendants?

V.   Was there sufficient evidence to convict appellant of aggravated assault?

In its Brief of Appellee, the State of Wyoming (State) synthesizes the same issues into four, as follows:

I.   Did the trial court err by consolidating the Appellant's trial with that of the three other defendants?

II.   Did the trial court commit reversible error by failing to give an instruction on "simple" battery?

III.   Did the Court err in giving jury instruction number nine defining the elements of aggravated assault and battery?

IV.   Was there sufficient evidence to support a conviction of aggravated assault and battery?

The crime for which Warren was convicted was committed in the course of a brawl that occurred in the parking lot of the Holiday Inn at Riverton at about 1:30 A.M. on September 10, 1989. A complete narrative of the events surrounding Warren's crime is not necessary. The conflict in its several ramifications was one of those inexplicable, dipsomaniacal confrontations, and only certain aspects of what occurred have any pertinency in this appeal. Another chapter of the story may be found in the opinion of the court in *Shongutsie v. State*, 827 P.2d 361 (Wyo.1992). It is sufficient to note that, in the course of the conflict, Lindberg Shongutsie pounded the skull of the victim, Richard Ferris, Jr., with a baseball bat, a 4″ × 4″ chunk of wood and, perhaps, other bludgeon-like instruments. While Ferris lay sprawled on the pavement of the motel parking lot, apparently unconscious, witnesses observed Warren kick Ferris once or twice in the head. Warren was wearing shoes described as Hush Puppies™. Although Ferris weighed approximately 200 pounds, and Warren weighed only 150 pounds, the kicks that were delivered were described as having been accomplished with sufficient force to move the victim's limp body by causing it to rotate some 90 degrees.

As a product of the night's events, Lindberg Shongutsie was convicted of second

degree murder for killing Ferris. Warren was convicted of aggravated assault and battery with a deadly weapon because he was found guilty of kicking Ferris in the head. Russell Warren, Warren's brother, was convicted of aggravated assault and battery committed upon a different victim in the course of the fight. Rebecca Shongutsie, Lindberg Shongutsie's wife, was acquitted of a charge of aggravated assault and battery in which the alleged victim was Ferris. The four defendants were tried together in a single proceeding and in front of a single jury.

Critical testimony with respect to the offense of aggravated assault and battery [1] came from a pathologist. The pathologist conducted the autopsy on the body of Ferris on the evening of September 15, 1989, shortly after Ferris died from the injuries he had suffered in the brawl that occurred on September 10. The pathologist's conclusion with respect to the cause of death was: "brain death, secondary to the central nervous system lacerations and contusions and skull fractures, which was secondary to the blunt traumatic injury to the head." The pathologist also testified that some of the abrasions and bruises on Ferris' head could have been caused by the kicks delivered by Warren. His testimony then continued:

Q. [By defense counsel for Lindberg and Rebecca Shongutsie] And I think you already told us that the fractures that you observed were consistent as having been produced by a block of wood or a bat or any object that was capable of administering substantial force to that portion of the head.

A. That's correct, yes, sir.

Q. Okay. Whether we've mentioned them or not?

A. Whether we've mentioned them or not.

Q. You indicated earlier that you didn't think that a person wearing Hush Puppies[TM] was likely to inflict the type of fractures you observed if he kicked a person.

A. Yes, I did.

Q. Okay, Did you make any assumption about the force with which that kick was applied?

A. No, I really didn't. I was assuming probably all force of kicks by an average individual.

Q. Okay. Would an average kick—well, let me ask you first. Did you make a determination as to the size of Mr. Ferris?

A. Yes, I did.

Q. How big was he?

A. Mr. Ferris had a measured length of, on the autopsy table, of six feet, one inch, we estimated his weight at about 200 pounds.

Q. Okay. Would the average kick that you are talking about be sufficient to reorient the body of a person that size by 90 degrees?

A. I'm not sure what you mean by reorient. You mean move the body 90 degrees? Is that what you mean?

Q. Right.

A. Is Mr. Ferris lying down at this point or standing?

Q. Lying down.

A. That would be a strong kick.

Q. Okay. Now, factoring that into your opinion, could that type of kick have either caused or created additional damage?

A. Well, a kick will cause damage. I have not said that a kick will not cause damage.

Q. Sure.

A. So I'm not really sure I understand your question.

Q. I mean on a kick of that type, if you had a small skull fracture, could it enlarge the fracture?

---

1. For purposes of this case, aggravated assault and battery is defined in Wyo.Stat. § 6–2–502 (1988) as follows:

   (a) A person is guilty of aggravated assault and battery if he:
   . . . .
   (ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;

   . . . .
   (b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years.

A. If a kick were applied to an area that was previously injured, yes, it would cause more severe damage to that area or more extensive damage than if there were no injury there in the first place. Especially if there were a skull fracture in that area, if—and at that point the skull is already fractured and the brain may already be damaged, a kick to that area would accelerate or accentuate or aggravate the brain damage.

Q. Okay. And so we're clear, this young person didn't die because he had a skull fracture, did he?

A. He died because his—well, his brain died because he had injury to the brain.

Q. That's right. It was the injury that occurred inside the skull. Isn't that what really caused the death?

A. The injury occurred inside the skull. The brain was damaged.

Q. Okay. And so any force that would apply with such consequence to cause injury inside the brain, whether it be—result in a fracture or not, could cause death; isn't that true?

A. In this particular case, if other injuries were already present in the brain and the skull fractures were present, any additional injury would exacerbate or add to brain injury.

Q. The real problem, as I understand it, is the bleeding and the pressure and the damage to the brain inside the skull. It's not the fact that the skull is cracked.

A. That's correct. You can have brain injury without having a skull fracture.

Q. Right. And in fact, it's not unusual for death to result from brain injury without skull fracture; isn't that true?

A. It occurs not uncommonly, yes.

In his testimony, the pathologist agreed the injuries to the right side of the victim's head were not as serious as the injuries to the back of his head. He testified that the injuries to the right side could have been caused by soft shoes. He also agreed the abrasions and bruises to Ferris' head could have been caused by his falling to the pavement in the parking lot, and that it would be difficult for a man of 150 pounds to cause the body of a 200 pound man to rotate 90 degrees by kicking him in the head. He stated, however, that this could be accomplished. The pathologist further agreed with the proposition that the injuries to the right side of the head would probably not have been life-threatening. That was tempered, however, by his previous testimony that, given a victim in Mr. Ferris' circumstances, the situation was different from that of a person who had not suffered any injury at all prior to any kicking.

■ It is in the context of this factual background that Warren complains about an impermissible instruction incorporating a presumption. His specific contention is that Instruction No. 9 led the jury to presume that his shoes were deadly weapons and, since no objection was made to the instruction, he urges that the giving of the instruction constitutes plain error. The instruction read:

### INSTRUCTION NO. 9

Earl Warren is charged with aggravated assault and battery in violation of Section 6-2-502(a)(ii), W.S., 1977, as amended. Pertinent portions of that statute provide as follows:

"a person is guilty of aggravated assault and battery if he ... intentionally or knowingly causes ... bodily injury to another with a deadly weapon...."

Earl Warren is charged with one count of aggravated assault and battery. The elements are:

### EARL WARREN—COUNT I

1. That the defendant, Earl Warren,
2. on or about September 10, 1989,
3. in Fremont County, Wyoming,
4. intentionally or knowingly caused bodily injury
5. to another person, Richard Ferris, Jr.,
6. with a deadly weapon, to wit: shoes.

If you find from your consideration of all the evidence that any of these elements

has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

If on the other hand, you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

In support of his argument, Warren cites Wyo.R.Evid. 303(c) which states:

> (c) *Instructing the jury.*—Whenever the existence of a presumed fact against the accused is submitted to the jury, the court shall instruct that it may regard the basic facts as sufficient evidence of the presumed fact but is not required to do so. In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the court shall instruct the jury that its existence, on all the evidence, must be proved beyond a reasonable doubt.

Warren also invokes a definition of the phrase "to wit" to support his argument. Our review of the definition of the term "to wit" in *Webster's Third New International Dictionary* 2418 (1986) results in the conclusion that, in this instruction, "to wit" is used only to advise the jury that the deadly weapon *alleged in the information* was Warren's shoes.

The instructions, read together, guided the jury to an understanding that each of the elements of the alleged crime had to be proved beyond a reasonable doubt. That requirement encompassed the allegation, and demanded that the jury find beyond a reasonable doubt, that Warren had used a deadly weapon. With respect to that element of the offense, the jury also was instructed as follows:

### INSTRUCTION NO. 7

. . . .

A "deadly weapon" is any instrument or object which is capable of producing and likely to produce death or grievous bodily harm (which means a hurt or injury of a serious nature. It need not be an injury of a permanent character.). The term "deadly weapon" can include instruments not generally considered to be weapons.

. . . .

When the instructions are read together, as our rules require, they were adequate and appropriate for the purpose of informing the jury that the deadly weapon the state alleged to have been used by Warren was his shoes and, even though shoes might not generally be considered a deadly weapon, the jury could find they could be so characterized under the circumstances of this case. The thrust of the pathologist's testimony was sufficient to permit the jury to conclude that, under the circumstances, Warren's shoes were deadly weapons. We note that even Warren does not maintain that shoes cannot be considered a deadly weapon under any circumstances. We also recognize that courts in other jurisdictions have found shoes to be deadly weapons in various circumstances. *State v. McFadden*, 25 Conn.App. 171, 593 A.2d 979 (1991); *State v. Shubert*, 102 N.C.App. 419, 402 S.E.2d 642 (1991); *State v. Taylor*, 485 So.2d 117 (La.Ct.App. 2 Cir.1986); *Craft v. State*, 158 Ga.App. 745, 282 S.E.2d 203 (1981); *Helton v. State*, 372 So.2d 390 (Ala.Cr.App.1979); *Orrill v. State*, 509 P.2d 930 (Okl.Cr.App.1973); *Grass v. People*, 172 Colo. 223, 471 P.2d 602 (1970); *State v. Born*, 280 Minn. 306, 159 N.W.2d 283 (1968).

Warren's reliance on *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); and *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), both of which deal with presumptions, is misplaced. This is not a case in which the jury was given an instruction that permitted the jury to presume the existence of an element of the crime. An analysis of the instructions quoted above, in light of how they would be understood by a reasonable juror, persuades us that the jury could only understand that it was their duty to weigh and determine the question of whether the shoes were a deadly weapon under the circumstances presented by this case. *See Harley v. State*, 737 P.2d 750 (Wyo.1987); *Krucheck v. State*, 671 P.2d 1222 (Wyo. 1983), *appeal after remand* 702 P.2d 1267 (1985). They also were told that, as a part

of the charge, the State had alleged the shoes were deadly weapons.

Furthermore, as one of his principal arguments to the jury, Warren contended that a shoe simply is not a deadly weapon as contemplated by Wyo.Stat. § 6–2–502 (1988). The instructions afforded Warren a full opportunity to apprise the jury of the impact of those instructions in terms of his defense to the crime charged.

■ We hold that the jury was accurately instructed. The evidence would permit the jury to determine correctly that the shoes, as used by Warren under the circumstances of this case, were a deadly weapon. It is clear that Warren was, or should have been, aware when he kicked Ferris that Ferris already was seriously injured and severe kicks with shod feet, even though in soft shoes, could have produced grave injury or death under the circumstances. Since we find no error was present, we do not consider this issue in the context of plain error. We content ourselves simply with noting that, under the plain error rule, Warren has not demonstrated the violation of any clear or unequivocal rule of law.

■ Warren also argues that the trial court should have instructed the jury on the lesser included offense of simple battery defined in Wyo.Stat. § 6–2–501(b) (1988) as follows:

A person is guilty of battery if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another.

It is important to this case to recognize that Warren did not offer an instruction on this claimed lesser included offense.

What transpired at the jury instruction conference is this:

[COUNSEL FOR WARREN]: Your Honor, on behalf of Earl Warren, we request an instruction for the lesser included crime of battery. I think the evidence in this case supports that.

If you take into consideration the definition of deadly weapon, the jury may very well find that there was no deadly weap-

on used, but that the defendant touched the victim.

THE COURT: [Counsel for the State]?

[COUNSEL FOR THE STATE]: State would argue that battery is not supported by the evidence in this case, Your Honor. Particularly taking into consideration the testimony of the pathologist, that while the Hush Puppy[TM] shoes may not in and of themselves cause skull fractures, for example, they could cause other breaks to the facial bones, and I believe those certainly fall within the definition of serious bodily injury.

THE COURT: All right. The Court rejects the proffered instruction. I'm—think that may be a problem for you, [Counsel for the State].

Go ahead. Any others?

[COUNSEL FOR THE STATE]: No. I don't have anything else.

This record does not demonstrate any objection to the refusal of this instruction. In *Muniz v. State*, 783 P.2d 141 (Wyo.1989), we held that the record *must* contain a clear statement sufficient to inform the trial court of the basis of asserted error. *See Brown v. State*, 661 P.2d 1024 (Wyo. 1983).

With respect to Warren's argument that he was denied an instruction on his theory of the case because the trial court refused to give the instruction on simple battery, our rule is that a defendant is entitled to have instructions on his theory of the case if those instructions sufficiently inform the jury of the theory of defense and if competent evidence exists to support the law expressed in the instructions. *Amin v. State*, 811 P.2d 255 (Wyo.1991); *McInturff v. State*, 808 P.2d 190 (Wyo.1991); *Oien v. State*, 797 P.2d 544 (Wyo.1990). No instruction was offered by Warren in this instance, although it would have been a simple matter for either counsel or the trial court to have fashioned an appropriate instruction.

The more critical issue is the requirement that there be evidence to support such an instruction. Warren's defense clearly was that he had not kicked Ferris; he was not contending that he had kicked

Ferris in a matter which might constitute a simple battery rather than an aggravated battery. The evidence on this point presented to the jury the question of whether Warren in fact had delivered at least two viciously applied kicks to the victim's badly injured head, and whether those kicks could have inflicted extremely serious injuries to Ferris. There was no question presented as to whether Warren had kicked Ferris in a manner that would not lead to that result.

Further, Warren's defense was not that the shoes were not a deadly weapon, even though he so argued to the jury. No evidence was offered by Warren that a shoe is not a deadly weapon, and the only evidence on the issue came from the pathologist who testified that a kick with a shoe inflicted upon a man with a fractured skull could be extremely damaging and could have produced serious injury in and of itself and, certainly, could have produced additional injury in the case in which the person kicked has multiple skull fractures.

So far as theory of the case is concerned, we are confronted with a situation well known in our jurisprudence, i.e., a case in which the defendant is either guilty or not guilty of the charged crime. The State presented evidence demonstrating all elements of the crime of aggravated assault and battery. Warren simply denied that he had kicked the victim. Under these circumstances, no lesser included offense instruction is warranted under the claim that it was a theory of the case instruction. *Amin v. State*, 695 P.2d 1021 (Wyo.1985); *Jones v. State*, 580 P.2d 1150 (Wyo.1978). For this further reason, the trial court did not err in refusing to give a theory of the case instruction on simple battery.

Relying upon *State v. Jeffries*, 430 N.W.2d 728 (Iowa 1988), Warren urges us to develop a new construct for considering the propriety of lesser included offense instructions. The process presented in *Jeffries*, and the legal authorities upon which it relies, are intriguing, but we are satisfied with the traditional analysis that we have applied with respect to the necessity for lesser included offense instructions. We

decline to adopt the rationale of the Iowa court. We hold that the district court did not err in refusing to give the lesser included offense instruction.

■ In yet another assertion of error, Warren argues that the district court should not have conducted the trial for all four defendants in one proceeding. Under our rules and our precedent, it is clear that the joinder of cases for trial is within the discretion of the district court, and we do not fault or adjust the trial court's ruling unless an abuse of discretion is clearly shown, together with prejudice resulting from that abuse of discretion. Wyo. R.Crim.P. 11(a), 12 and 13; *Eatherton v. State*, 761 P.2d 91 (1988), *appeal after remand* 810 P.2d 93 (Wyo.1991); *Amin*, 695 P.2d 1021.

Warren's argument focuses mainly on the fact that evidence came in as a result of the joinder which he asserts would not have been admissible if he had been tried separately. For example, he points to the evidence presented in the form of: (1) the testimony of the pathologist, including the "gruesome" photographs that were used to show the injuries to Ferris' skull and brain; (2) the testimony of witnesses that Warren's brother, Russell, had cut another victim of the fight twice with a knife; (3) the testimony by witnesses that Rebecca Shongutsie also had kicked Ferris and she hoped they had killed Ferris.

The facts that justify the jury's verdict as to Warren arise out of a brawling fight or melee that lasted only a few minutes. It would be difficult, if not impossible, to sort out and compartmentalize, defendant by defendant and case by case, the events that occurred that night. The State is entitled to have leeway in presenting the factual picture to the jury. *Hopkinson v. State*, 664 P.2d 43 (Wyo.1983), *cert. denied* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983); and *see State v. Windsor*, 110 Idaho 410, 716 P.2d 1182 (1985); *Shelton v. State*, 287 Ark. 322, 699 S.W.2d 728 (1985); 22A C.J.S. *Criminal Law* §§ 716 and 717 (1989). The evidence that Warren insists was prejudicial was nothing more than that, i.e., evidence which served to relate to

the jury the whole story of what took place in those fateful, fatal few minutes. The only evidence that may not have touched upon Warren's case related to the conduct of his brother, Russell, and it is clear from the record that the jury could not have relied upon Russell Warren's conduct in addressing the issues in Warren's case.

We hold that there was no error committed by the district court in joining the trials of the four defendants. Warren has failed to demonstrate an abuse of discretion and any prejudice that might have resulted from such an abuse of discretion.

█ Finally, with respect to the contention that there was not sufficient evidence to convict Warren of aggravated assault, we invoke the usual rule for analysis of sufficiency of the evidence. *Jennings v. State*, 806 P.2d 1299 (Wyo.1991). There is no need for a lengthy recitation. This argument by Warren is simply an adjunct to those propounded earlier with respect to whether his shoes were deadly weapons under the circumstances of this case and whether the kicks he administered to Ferris were of a deadly nature. We already have resolved the essence of these claims in addressing the argument concerning the instructions. We hold that the evidence, considered in the light most favorable to the State, is adequate to sustain Warren's conviction for aggravated assault and battery with a deadly weapon.

The judgment and sentence of the trial court is affirmed in all respects.

URBIGKIT, Chief Justice, dissenting.

The decedent, Richard Ferris, Jr., came to the Holiday Inn in Riverton, Wyoming to fight and he stayed there to die. Both events were tragic. No less tragic are the results of this "dipsomaniacal confrontation[ ]" to the survivors. Op. at 305. To be judicially faced is the penitentiary confinement sentence as the result of the participation or the mere presence of the appellant, Earl Warren (Warren), whichever the case may have been.

I dissent in conclusion that the theory of defense instruction of simple battery should have been given and that the in-

struction which was used effectively and improperly established, as a matter of law, that soft-soled shoes were dangerous weapons. The decision now made to affirm the conviction leaves Warren with the worst of all worlds: a denied defense instruction and trial court presumed use of a dangerous weapon—his shoes.

I.

IT IS WRONG TO SUBSTITUTE FINAL ARGUMENT FOR PROPER TRIAL COURT INSTRUCTION

One of my major concerns is emphasized by language used in the majority decision:

Furthermore, as one of his principal arguments to the jury, Warren contended that a shoe simply is not a deadly weapon as contemplated by Wyo.Stat. § 6–2–502 (1988). The instructions afforded Warren a full opportunity to apprise the jury of the impact of those instructions in terms of his defense to the crime charged.

Op. at 309. This is again the final argument as a proper substitute for adequate trial court instruction conception created in the Wyoming Supreme Court. *See Virgilio v. State*, 834 P.2d 1125 (Wyo.1992) Urbigkit, C.J., dissenting and *Bouwkamp v. State*, 833 P.2d 486 (Wyo.1992) Urbigkit, C.J., dissenting. We ignore and reject the foundational tenant of our law that the function of a trial court's charge in instructions to the jury is to lead the jury in its deliberation and to prevent confusion.

The final argument replacement justification fails in two significant ways. First, it is just not supportable by the standards of American–English law and, secondly, it shows a misunderstanding of the sincerity and comprehensiveness of jury attention in fact-finding decisions. The jury knows instructions are instructions and that arguments are opinions of counsel. Arguments by counsel and trial court instructions are simply not equally persuasive nor identically effective in directing the decision of the fact-finding jury.

We presume, with reasonable justification, that the jury will follow the trial court's instructions. *Clarke v. Vandermeer*, 740 P.2d 921 (Wyo.1987); *Barnette v. Doyle*, 622 P.2d 1349 (Wyo.1981). We instruct the jury that argument is only the contention of an advocate. *Condict v. Whitehead, Zunker, Gage, Davidson & Shotwell, P.C.*, 743 P.2d 880 (Wyo.1987). Furthermore, if application of legal principles is to be derived from argument, we personalize the justice delivery system into an eloquence contest of competing debaters. In the process, the controlling direction of W.R.Cr.P. 31(c) (formerly W.R.Cr.P. 32(c)) (F.R.Cr.P. 31(c)) regarding lesser included offense verdict is also unused and ignored. *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). *Cf. People v. Kelly*, 1 Cal.4th 495, 3 Cal.Rptr.2d 677, 822 P.2d 385 (1992) and *People v. Jones*, 395 Mich. 379, 236 N.W.2d 461 (1975).

## II.

### WHO DETERMINES—THE TRIAL COURT OR THE JURY—THAT HUSH PUPPY SHOES ARE DANGEROUS WEAPONS?

The history and hysteria of this September 10, 1989 group argument and gang fight cannot be ignored in assessing responsibility for the results which occurred in the motel parking lot following a weekend dance. Two contesting groups were involved, significant drinking had occurred, the participants all knew each other, they were all Native Americans with different group backgrounds, and this argument was a follow-on occurrence from a month earlier fatal confrontation which involved generally the same groups and from which another fatality had resulted. (The Double Dives incident in the same community.) It was at night, many people were involved, wild events were occurring and conduct was uncontrolled. No evidence was presented that Warren originally incited the confrontation and no evidence exists that the decedent was invited to become involved in activities that turned argu-ments and minor skirmishes into a fatal club and weapon gang fight.

These background facts cannot be ignored in assessing the general scope of this appeal: the right of Warren to have a lesser included offense instruction on his theory of defense which was that if he had anything to do with the injury to the decedent, it was not aggravated assault. I disagree that contended non-involvement preclusively denied Warren a right to assert his alternate defense of minor involvement, if any at all. This means in defense that with denial of doing anything, he should still be given the right to an instruction addressed to the general situation that if he did do anything, it was minor in cause and participation constituting, at the most, assault and battery. This is in some sense the mere presence/standing around defense. *See Virgilio*, 834 P.2d 1125 Urbigkit, C.J., dissenting. The majority is totally unpersuasive in delimiting the theory of defense right for Warren to have the jury properly instructed. This case provides another example of judicial fact-finding to limit the resolutional scope of jury inquiry. I continue to disagree with this judicially-imposed constriction of the jury function in broad perspective and categorically deny appropriateness for this case.

The denied lesser included offense instruction is directly related to the deadly weapon instruction that was given which unfolds into this first subject for dissent. If plain meaning means anything, *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization*, 813 P.2d 214 (Wyo.1991), Instruction No. 9 took away from the jury the decisional requirement to decide whether the shoes worn by Warren at that time, and used however they may have been, were in that particular case a deadly weapon *within those facts and pursuant to the conflicting evidence of what actually happened.*

Element 6 of Instruction No. 9 says what it says—the shoes (if used) were deadly weapons. Instruction No. 7 only tells the jury what the trial court had determined as a present fact in Instruction No. 9. Final argument could not erase this presumed

and determined fact within the absolutely confused and totally conflicting evidence.

What the jury heard in Instruction No. 9 is what we now should see:

Earl Warren is charged with one count of aggravated assault and battery * * *.

\* \* \* \* \* \*

* * * The elements are:

\* \* \* \* \* \*

* * * with a deadly weapon, to wit: shoes.

If you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

If on the other hand, you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

What this leaves for jury decision is whether Warren kicked the decedent; if he did, he used a deadly weapon and was guilty of aggravated assault. The jury was, unfortunately, not guided for its function of adjudicatory fact finding. It was directed in decision and limited in application of opportunity to provide justice since the instruction had been given effectively determining that the shoes were deadly weapons and then the lesser included offense, which was correlative in jury decision making, was then denied following Warren's request.[1] Reversible error was committed in the jury instruction which was given. *Moore v. United States*, 599 A.2d 1381 (D.C.App.1991).

## III.

## THE LESSER INCLUDED OFFENSE INSTRUCTION: DEFINITION AND USE UNDER SOME ESTABLISHED STANDARD

This court is in error in failure to recognize the erratic and unplanned utilization as a *modus vivendi* long existent and now continued in application *in this jurisdiction* of the lesser included offense instruction.[2] I do not find, candidly, any "tradi-

---

1. I find absolutely no basis to square this decision with the majority concepts upon which reversal came in *Stamper v. State*, 662 P.2d 82, 94 (Wyo.1983) and particularly so with regard to the special concurrence of then Chief Justice Rooney who stated:

   Before an item can be a deadly weapon, it first must be a weapon. If fists or feet, clad in shoes, boots, or otherwise, are dangerous weapons,[2] then almost everyone is continually and constantly armed with a dangerous weapon * * *.

   In support of this statement, Chief Justice Rooney then recited in footnote:
   2. Fists or bare hands are not dangerous weapons, per se. *State v. Calvin*, 209 La. 257, 24 So.2d 467 (1945); *People v. Eaton*, 25 A.D.2d 692, 268 N.Y.S.2d 255 (1966); *Bean v. State*, 77 Okl.Cr. 73, 138 P.2d 563 (1943); and *People v. Vollmer*, 299 N.Y. 347, 87 N.E.2d 291 (1949). Shoes, per se, are not dangerous weapons. *Smith v. State*, 79 Okl.Cr. 151, 152 P.2d 279 (1944); and *United States v. Barber*, 297 F.Supp. 917 (D.C.Del.1969).
   *Id.*

2. Relevant Wyoming cases include: *Pearson v. State*, 818 P.2d 1144 (Wyo.1991); *Walter v. State*, 811 P.2d 716 (Wyo.1991); *Eatherton v. State*, 810 P.2d 93 (Wyo.1991); *Warren v. State*, 809 P.2d 788 (Wyo.1991); *Craney v. State*, 798 P.2d 1202 (Wyo.1990); *Muniz v. State*, 783 P.2d 141 (Wyo.1989); *Keller v. State*, 771 P.2d 379 (Wyo.1989); *Lauthern v. State*, 769 P.2d 350 (Wyo.1989); *Loomer v. State*, 768 P.2d 1042 (Wyo.1989); *Goodwine v. State*, 764 P.2d 680 (Wyo.1988); *Simonds v. State*, 762 P.2d 1189 (Wyo.1988); *Driskill v. State*, 761 P.2d 980 (Wyo.1988); *Griego v. State*, 761 P.2d 973 (Wyo.1988); *Eatherton v. State*, 761 P.2d 91 (Wyo.1988); *Roose v. State*, 759 P.2d 478 (Wyo.1988); *Miller v. State*, 755 P.2d 855 (Wyo.1988); *Lessard v. State*, 719 P.2d 227 (Wyo.1986); *Seeley v. State*, 715 P.2d 232 (Wyo.1986); *Carey v. State*, 715 P.2d 244 (Wyo.), *cert. denied* 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986); *Krucheck v. State*, 702 P.2d 1267 (Wyo.1985); *Amin v. State*, 695 P.2d 1021 (Wyo.1985); *Johnson v. State*, 695 P.2d 638 (Wyo.1985); *Amin v. State*, 694 P.2d 119 (Wyo.1985); *Jahnke v. State*, 692 P.2d 911 (Wyo.1984); *Eckert v. State*, 680 P.2d 478 (Wyo.1984); *Stamper v. State*, 672 P.2d 106 (Wyo.1983); *Balsley v. State*, 668 P.2d 1324 (Wyo.1983); *Stamper*, 662 P.2d 82; *State v. Selig*, 635 P.2d 786 (Wyo.1981); *Neilson v. State*, 599 P.2d 1326 (Wyo.1979), *cert. denied* 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980); *Abeyta v. State*, 592 P.2d 705 (Wyo.1979); *Jones v. State*, 580 P.2d 1150 (Wyo.1978); *Fuller v. State*, 568 P.2d 900 (Wyo.1977); *Richmond v. State*, 554 P.2d 1217 (Wyo.1976); *Evanson v. State*, 546 P.2d 412 (Wyo.1976); *Oldham v. State*, 534 P.2d 107 (Wyo.1975); *Martinez v. State*, 511 P.2d 105 (Wyo.1973); *Moss v. State*, 492 P.2d 1329 (Wyo.1972); *Rhodes v. State*, 462

tional analysis," op. at 310, in Wyoming application for usage of this instruction and certainly no developed theory on analysis or application of the basic concepts involved. We could do far worse than to now take a planned approach with the creation of a thoughtful and organized structure for Wyoming law. *Cf. Cordova v. Gosar*, 719 P.2d 625 (Wyo.1986) regarding analysis of the constituency of summary judgment. The world of the law calls out for appellate courts to organize and synthesize a torrent of cases into a definable, dependable and usable waterway of depth, consistency and certainty.

In the development of a cogent and consistent structure for the law and its utilization by the practicing bar, understanding by the trial judge and determination by the trial court are indispensable to establish general principles, standards and rules if the law is not to be a combination of ad hoc and accidental results. This truism is especially relevant to the lesser included offense instruction.

The Iowa Supreme Court recognized what the academic scholars had forcefully written—that order was needed in definition and application of the lesser included offense doctrine. In *State v. Jeffries*, 430 N.W.2d 728, 730 (Iowa 1988), that court acknowledged the need and accepted the opportunity:

> This case presents us with an opportunity to reexamine our approach to the lesser-included offense doctrine. This subject is fraught with confusion because of the doctrine's elusiveness in its definition and application. Adding to this confusion is the interplay between the doctrine and several constitutional principles. *See* Blair, *Constitutional Limitations on the Lesser–Included Offense Doctrine*, 21 Am.Crim.L.Rev. 445, 446 (1984). Generally, the doctrine allows a trier of fact to convict a defendant of an offense less serious than the one charged. *Id.* at 445. Rooted in sixteenth-century English common law, the

doctrine found its way into American jurisprudence in the late 1700's. Ettinger, *In Search of a Reasoned Approach to the Lesser–Included Offense*, 50 Brooklyn L.Rev. 191, 195 (1984).

Historically, the doctrine developed to implement the policy at common law against multiple trials for the same allegations of illegal conduct. The doctrine eventually evolved as an aid to the prosecution when there was a failure of proof of some element necessary for conviction of the offense charged. Mascolo, *Procedural Due Process And the Lesser–Included Offense Doctrine*, 50 Alb.L.Rev. 263, 265–66 (1986). Today, the defense, more often than the prosecution, is likely to seek the doctrine's application as a hedge against conviction of the greater offense. Barnett, *The Lesser–Included Offense Doctrine: A Present Day Analysis For Practitioners*, 5 Conn. L.Rev. 255, 255–56 (1972).

In applying the doctrine, courts must ask two questions: what is a lesser-included offense, and when should a trial court instruct on it. Koenig, *The Many–Headed Hydra of Lesser–Included Offenses: A Herculean Task for the Michigan Courts*, 1975 Det.C.L. Rev. 41, 43.

It is in answering the two questions recognized by the Iowa Supreme Court that we are also faced with a lack of consistency and absence of a determinative theory for Wyoming law. Lack of foreseeability and non-consistency dominates individual case utilization when a basic theory or substantive understanding of the principle is ignored or missing. Those unanswered questions are simplistically: what is a lesser included offense and when should a trial court instruct on it? The court in *Jeffries*, in consistency with scholars on the subject, recognized the three approaches to the definition of a lesser included offense: "1. The common-law or strict statutory-elements approach"; "2. The cognate approach"; and "3. The Model Penal Code approach." *Id.* at 730–31 (emphasis in original).

P.2d 722 (Wyo.1969); *State v. Woodward*, 69 Wyo. 262, 240 P.2d 1157 (1952); *State v. Goettina*, 61 Wyo. 420, 158 P.2d 865 (1945); *State v.*

*Gonzales*, 46 Wyo. 52, 23 P.2d 354 (1933); and *Ross v. State*, 16 Wyo. 285, 93 P. 299 (1908).

Following definition of the principle to then be determined is whether the trial court should give the instruction, which analysis categorizes the cases into one of two general approaches: "1. *Jury function theory*" or "2. *Court function theory*." *Id.* at 733 (emphasis in original).

These two decisional pathways are intermixed with three constitutional concerns which unfortunately have received little or almost no attention in cases written by this court. These include adequate notice, double jeopardy and reliability of the fact-finding process.

## IV.

## INTRODUCING REVIEW OF SOME EARLIER WYOMING CASES WITHIN A NATIONAL STANDARD

How these combinations of legal theory relationships are addressed or, more accurately, not even considered in the denied instruction for Warren is the substance of my present dissent. How then within these considerations have we given our attention to this solid, reliable and concerned family man who, in his unfortunate causality, happened to be in the wrong place at the wrong time? What is the standard here or the standard in the past that is properly applied with reliability to determine how justice is provided within the Wyoming criminal justice delivery system? I am dissatisfied after examination of the Wyoming case law that any "traditional analysis," op. at 310, in theory or practice of our law is actually found except separate case determinates and result-oriented application. Certainly for at least thirty years, no thoughtful evaluation of theory usage or constitutional law involvement has been included in written opinions published by this court. In learning from the Iowa effort now three and one-half years past, I think it is time that the same kind of scholarly analysis and adaptation of the lesser included offense principles should be undertaken by this court to build Wyoming's future legal structure.

A quick reference to only a few early Wyoming cases before some examination of all state precedent reveals that the issue is not academic—it is undeniably substantive and significant. In *State v. Woodward*, 69 Wyo. 262, 240 P.2d 1157 (1952), the defendant invaded the residence of the male victim while looking for his missing wife and proceeded to severely, and in extended fashion, cause grievous physical assault. A significant part of the assaultive conduct was kicking the prone victim during the continued battery. The jury was instructed, without objection by the defendant, that they could convict for either aggravated assault and battery or simple assault and battery. Defendant's post-trial complaint, after conviction had been entered on aggravated assault and battery and entry of a modest confinement punishment of five months and a $500 fine, was that the aggravated assault instruction was inappropriate. Factually, the conduct evidenced for that defendant was exponentially more severe and inexcusable in extended violence than was the evidence of individual conduct produced against Warren in this case.

The question we are presented is what theory of lesser included offense instruction process differentiates to explain the utilized alternative instructions including lesser included offense in *Woodward* and its denial in this present case? We also need to look at the other early Wyoming lesser included offense case of *State v. Goettina*, 61 Wyo. 420, 158 P.2d 865 (1945), where the husband shot his wife, was convicted of manslaughter and then complained on appeal that no instruction should have been given on the greater offenses permitting conviction on first or second degree murder. Chief Justice Blume answered for the jury judgment function:

It is contended that the court * * * erred in instructing the jury on the law of first degree murder and second degree murder in connection with an instruction on manslaughter, for the reason that there is no evidence in the case from which the jury could infer that the defendant was guilty of murder. They argue that such instructions had a tendency to merely give the jury an opportunity to compromise on the verdict to be brought in.

That argument is not without force. * * * And in a clear case that fact should not be overlooked by the trial court. Instructions must be based on the evidence in the case and the trial court should, in the first instance, determine the degree of the crime which the evidence tends to establish and limit the instructions accordingly. * * * *However, since the jury, except in a clear case, is the judge of the guilt or innocence of the defendant, it has been held that too great a burden in this connection will not be imposed upon the trial court, and that if there is any evidence at all showing the elements of the higher degree of crime, it is not error to instruct on such higher degree, although the verdict for such higher degree might be set aside as not sustained by the evidence; since it is only when the evidence without conflict does not prove the essential elements of the higher offense that it is error to submit an issue thereon.*

*Id.* at 455, 158 P.2d at 878 (emphasis added).

What Chief Justice Blume addressed and what the case determined is that the fact-finding responsibility in the criminal prosecution case is charged to the trial jury and not the judge. I would apply the identical reasoning to the right of Warren to have the jury decide between the gradients of assault—aggravated or simple.

The other two early Wyoming cases provide a consistency in thesis; some evidence is required but the jury should be the fact finder. In *State v. Gonzales*, 46 Wyo. 52, 23 P.2d 354 (1933), lacking a transcript of evidence, the court refused to say as a matter of law that a lesser included offense instruction was required *in every case* with the charge of assault with intent to commit a felony. In *Ross v. State*, 16 Wyo. 285, 93 P. 299 (1908), when the uncontested facts revealed the defendant was caught in the act of assault to commit rape on a small child, this court agreed with the trial court that instructing on the lesser included offense when defendant only intended to assault the small girl was not justified factually for the instruction to be provided to the jury.

As I suggested in comment in prior cases, it is time for this court to realistically examine and consistently apply some definable concept for defining and determining when to instruct the jury on a lesser included offense. The majority here notes and then refuses to examine, let alone follow, the most detailed and comprehensively analyzed case which will undoubtedly become a classic. *Jeffries*, 430 N.W.2d 728.

We start with the majority opinion in this case and then travel backward in search of some traditional analysis that can be given to a logical destination establishing the creation of some consistent rule. Wyoming law in this regard follows a common occurrence which results in a justified conclusion, but does not build a described actuality upon which future cases can be reliably determined with consistency by application of a realistically described status and process.

Like many requirements for the utilization of legal rules, there are two steps to answer: (1) define what is a lesser included offense, and (2) establish methods for application. Facing alternatives for both decisions, this court, in its numerous cases, has simply failed to enunciate justification for what was done within some understanding of the differences delineated by the commentators. Consequently, no consistency has resulted and, instead, an ad hoc decidendum is demonstrable. We should ask, and answer, what is a lesser included offense and when should a trial court instruct on it? *Jeffries*, 430 N.W.2d at 730 (citing Dorean Koenig, *The Many–Headed Hydra of Lesser Included Offenses: A Herculean Task for the Michigan Courts*, 1975 Det.C.L.Rev. 41, 43 (1975)). Furthermore, we should understand that the definition of a lesser included offense is conceptual and the test for ·application is philosophic. As *Jeffries*, 430 N.W.2d at 730, further leads:

This is so because the doctrine is based on a relationship between the elements of at least two separate crimes. Barnett, [*The Lesser–Included Offense Doctrine:*

*A Present Day Analysis For Practitioners,*] 5 Conn.L.Rev. [255] at 256 [ (1972) ]; Comment, *The Lesser–Included Offense Doctrine in Iowa: The Gordian Knot Untied,* 59 Iowa L.Rev. 684, 684 (1974).

Courts have generally adopted any one of three approaches and, in some cases, a combination of these approaches to define a lesser-included offense. This phenomenon has caused much of the confusion surrounding the doctrine. Blair, [*Constitutional Limitations on the Lesser–Included Offense Doctrine,*] 21 Am.Crim.L.Rev. [445] at 447 [ (1984) ]. The three approaches have been denominated the common-law or strict statutory-elements approach, the cognate approach, and the Model Penal Code approach.

Once the legal principle is conceptually defined for the lesser included offense, as a selection from any/or combination of the three generalized choices available, the second stage examination for the court remains to determine whether the trial court should give the lesser included offense instruction to the jury. Again, a choice is provided which, in reality, is basically philosophical, striking into the broad premises of American law by choosing either a jury finding theory or a court function resolution.

In *Jeffries,* Justice Lavorato carefully and in clear detail provided an understanding of both the difference and the adjudicatory destination intended:

Having decided which approach to use to define a lesser-included offense, a court is then left with the question of when to instruct on such an offense. Two basic theories underlie the approaches courts have taken to this question. One theory considers it a jury function to determine when a lesser-included offense exists; the other considers it a court function.

1. *Jury function theory.* The jury function theory operates from the premise that a not guilty plea controverts *all* the elements of the offense and requires that the State prove the elements beyond a reasonable doubt. It also recognizes that the jury may reject all or any part of the State's evidence, whether controverted or not. Logically then, the possibility of finding a lesser-included offense is always present. *See* Barnett, 5 Conn. L.Rev. at 274; Comment, 57 Nw. U.L.Rev. at 66.

Stated another way, if the evidence is sufficient to convict on the greater offense then, as a matter of law, it is sufficient to convict on any lesser-included offense. *[People v.] Beach,* 429 Mich. [450] at 464, 418 N.W.2d [861] at 867 [ (1988) ]. Thus, even though the only evidence is presented by the State, a logical application of the lesser-included offense doctrine requires an instruction on the lesser-included offenses to be given always. The result is the same when only one witness testifies for the State, or when the defendant presents no evidence, testifies but denies culpability, asserts an alibi defense, or claims insanity. The net effect is that a "conviction of the lesser-included offense [is] possible regardless of the state of the evidence." Comment, 57 Nw.U.L.Rev. at 67; *see also Fike v. State,* 255 Ark. 956, 959, 504 S.W.2d 363, 365 (1974) (applying jury function theory); *[State v.] Brown,* 163 Conn. [52] at 60–61, 301 A.2d [547] at 552 [ (1972) ] (same); *State v. Peterson,* 290 So.2d 307, 311 (La.1974) (same); *Beach,* 429 Mich. at 461–65, 418 N.W.2d at 866–68 (describing the jury function theory in conjunction with strict statutory-elements approach.)

2. *Court function theory.* Courts that have chosen to employ the court function theory have not disputed the logic of the jury function theory. They have, however, chosen to ignore it. Instead, they have required evidence of a lesser-included offense as a practical compromise between two considerations: the prosecution's fear that juries will reach "compromise verdicts" and the defendant's fear that a jury "will convict on insufficient evidence rather than let a defendant they believe guilty of some wrongdoing go free." Comment, 57 Nw. U.L.Rev. at 68.

Absent a fact question as to at least one of the elevating elements of the

greater offense, a trial court, where the court function theory is used, may not submit a lesser-included offense instruction. The trial court evaluates the record and determines whether such a fact question is generated. Such evidence may come from either the State or the defendant. McColl, *Lesser–Included Offenses in Federal Court*, 44 Tex.B.J. 308, 309 (1981).

Proponents of the court function theory argue that it may seem the trial court is weighing the evidence as a fact-finder. But, the argument continues, the trial court's assessment of the evidence is merely for the purpose of determining whether to submit the lesser-included offense instruction, a determination that is a law question. *See State v. Williford*, 103 Wis.2d 98, 112, 307 N.W.2d 277, 283 (1981).

The court function theory also differs from the jury function theory in how a defense is considered. Under the court function theory, when an alibi or insanity defense is used or the defendant presents no defense at all, a lesser-included offense instruction is precluded, provided that no evidence appears in the record to controvert the elevating element in any way. Comment, 57 Nw. U.L.Rev. at 66; *see also [U.S. v.] Johnson*, 637 F.2d [1224] at 1241; [ (9th Cir. 1980) ] *State v. Ramos*, 108 Ariz. 36, 38, 492 P.2d 697, 699 (1972); *Marable v. State*, 154 Ga.App. 115, 116, 267 S.E.2d 837, 838 (1980).

Critics of the court function theory point out that

"[e]ven though the uncontroverted evidence shows only the greater offense, the determination that this decrees only the greater offense puts the judge in the fact-finding position. The invasion of the jury province becomes clearer when the total picture is viewed—that is, if it is seen in relation to the many times when instructions on included offenses are given, even though the evidence is uncontroverted. Thus, if a judge believes a witness, or dislikes a defendant, or dislikes the crime involved, instructions on lesser

offenses are not given. If the judge is sympathetic to the defendant, or tends to doubt the testimony, or [does not] believe the type of case involved should be a crime, [the judge] does give instruction[s] on lesser offenses. Or perhaps one judge always gives included offense instructions, while another never does. In this regard, the judge becomes the juror. And it is this lack of standards which is so offensive to due process, and where the function of judge and jury intermingles."
Koenig, 1975 Det.C.L.Rev. at 63–64.

*Id.* at 732–34 (emphasis in original).

What brings me to comprehensively dissent in this case is the ignored fact in Wyoming law that there are broad-based, constitutional concerns implicit in an adequate understanding and utilization of the lesser included offense instruction. *Jeffries* and many other scholarly examinations have comprehensively considered, and frequently questioned, why the courts do not recognize the function and constitutional basis of the concept included in the lesser included offense instruction. Included are adequate notice under the Sixth Amendment, double jeopardy under the Fifth Amendment, and reliability of the fact-finding process under the Fourteenth Amendment as federal constitutional concerns. Under the Wyoming Constitution, I would find art. 1, § 6, due process of law; art. 1, § 9, trial by jury inviolate; art. 1, § 10, right of accused to defend; and art. 1, § 11, self-incrimination, jeopardy (double jeopardy), all to be logically and realistically involved. *See* Edward G. Mascolo, *Procedural Due Process and the Lesser–Included Offense Doctrine*, 50 Alb.L.Rev. 263 (1986) and Christen R. Blair, *Constitutional Limitations on the Lesser Included Offense Doctrine*, 21 Am.Crim.L.Rev. 445 (1984).

To initiate understanding within some preliminary analysis, it is necessary to recognize the three separately definable concepts for the lesser included offense instruction and two methods for application: jury function and court function. These functions are then totally embraced within

three constitutional concerns: Sixth Amendment notice; Fifth Amendment double jeopardy; and Fourteenth Amendment due process. The comment in this majority of satisfaction "with the traditional analysis that we have applied" invites and requires dispute about how the lesser included offense instruction has been addressed and utilized in Wyoming law, and in particular, in more recent times, by citation to a federal case which has been definitively and accurately described as an aberration in regard to an essential element controlling a formula application. Op. at 310. The real difficulty with this decision is the statement which rejects *Jeffries*, 430 N.W.2d 728. The opinion does not describe what in *Jeffries* it either apprehends or rejects. Surely, it is unlikely that the rejection ignores the real facts that there are three differentiated concepts for definition and two distinguished methods for application. What is different is what this court does here to disregard logical authorities and constitutional preclusions and to ignore W.R.Cr.P. 31(c) (formerly W.R.Cr.P. 32(c)).

### V.

### UNSETTLED STATUS OF THE MORE RECENT WYOMING CASES

I take a cursory travel backward through Wyoming cases to authenticate this dissent in finding a confused, unjustified and ad hoc application of a far more pervasive idea: waiver by theory of defense, which in reality is waiver if a real defense is presented.

In *Jeffries*, the Iowa Supreme Court retained the historical statutory element test and applied the jury function. It is acceptance of the jury function test for instruction that the process was simplified and replaced by recognized, clear rules when

the factual determination was retained for jury decision.[3] Overtly, the majority here has eschewed jury decision and surely does not use the statutory-elements definition for decision. It would appear that the cognate focus system was not directed to the evidence, but rather determined by the theory of defense, e.g., if his theory was that he did not kick the victim, he was stuck with aggravated assault, whether barefoot or wearing, as he was, soft-soled shoes. Both the evidence and the statutory elements were, like the jury function, disregarded in final decision. In reality, this court has conceptualized a totally different adaptation which is related to neither statutory elements nor evidence, resulting in the denial of a properly requested lesser included offense instruction. In the process, all three constitutional concepts are similarly disregarded. The decisional process narrates in opinion the traditional development of the lesser included offense instruction to have been originally employed for prosecutorial assistance, and here and now when occasionally requested by defendants, it is viewed with displeasure and probable denial. We examine, then, this one-sided and ad hoc "traditional analysis" in Wyoming law. Op. at 310.

*Pearson v. State*, 818 P.2d 1144 (Wyo. 1991) involved a Colorado car theft which resulted in a Wyoming high-speed, homicide collision. The case was unremarkable in recognition that the defined value of the stolen car created a felony offense. With a grand-larceny theft, a petty-larceny lesser included offense instruction was properly rejected. The identical nature of the elements of grand and petty theft were examined and the court's decision was made by a cogent approach with evidentiary review. *Pearson* differs from the rule provided in the present case since founded upon a sub-

---

**3.** The Iowa Supreme Court noted two exceptions to the jury-function, automatic-instruction rule: If the defendant stipulates to the dissimilar element of the greater offense or if the statutory structure requires that certain lesser included offenses be considered, although they may not meet the technical statute rule by definition consequently requiring a cogent-evidence approach. The Iowa Supreme Court reached its decision in recognition and application of its

rule of criminal procedure which, federal in derivation, is identical with the Wyoming rule, W.R.Cr.P. 31(c) (formerly W.R.Cr.P. 32(c)) (emphasis added), which states:

*Conviction of lesser offense.*—The defendant may be found guilty of an offense *necessarily included* in the offense charged or of any attempt to commit either the offense charged or an offense *necessarily included* therein if the attempt is an offense.

stance of the evidence test. Conversely, in *Walter v. State*, 811 P.2d 716 (Wyo.1991), the conviction came on the lesser included offense, provided by a court-tried case which used the statutory elements test and fact-finding function of the trial court. Appeal came on sufficiency of the evidence for guilt on the lesser included offense.

*Warren v. State*, 809 P.2d 788 (Wyo. 1991) likewise provided a conviction for attempted voluntary manslaughter reduced from a charge of attempted second degree murder. The claim of error was sufficiency of the evidence and not definition or utilization of the lesser included offense instruction. The statutory difference in offenses involving malice triggered the availability for jury decision to convict for murder or manslaughter.

*Eatherton v. State*, 810 P.2d 93 (Wyo. 1991) (*Eatherton II*), Urbigkit, C.J., dissenting, is similarly more convoluted where it essentially involved a *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) and *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) decision for retrial after a partial acquittal in the first trial. The relational fact was failure to give a lesser included instruction in the first trial. *Eatherton v. State*, 761 P.2d 91, 93 (Wyo.1988) (*Eatherton I*). *Eatherton* is an anomaly in recent Wyoming case law. This court reversed a burglary conviction for failure to give a lesser included offense instruction for criminal entry in *Eatherton I*. Cited was the five-point *Chapman* test, *United States v. Chapman*, 615 F.2d 1294 (10th Cir.), *cert. denied* 446 U.S. 967, 100 S.Ct. 2947, 64 L.Ed.2d 827 (1980), without including the waiver by plea or defense which becomes, in Wyoming law, the hallmark of the *Chapman* jurisprudence.[4]

In reversal in *Craney v. State*, 798 P.2d 1202 (Wyo.1990), we applied the standard application of the statutory elements test where the defendant was convicted of attempted third-degree sexual assault when charged with first-degree sexual assault. We found plain error, since third-degree sexual assault (the old statutory rape) depends on an entirely different element, age differential, which is not included in first degree sexual assault. Consequently, statutorily, the third-degree could not be a lesser included offense of first-degree. In footnote, the opinion recognized the three principal approaches for definition of the lesser included offense, citing *Jeffries*, 430 N.W.2d 728. The decision was consistent with *Jeffries* because it presented essentially a statutory application analysis for reversal of a conviction. *See also Griego v. State*, 761 P.2d 973 (Wyo.1988).

*Muniz v. State*, 783 P.2d 141 (Wyo.1989), although subsequently cited on this subject, has no relevance since determined on inadequate objection to give a lesser included offense instruction. *Keller v. State*, 771 P.2d 379 (Wyo.1989) is a more conventional case which, again, did not present the veto by theory of defense—*Chapman* idiom. However, an interesting off-shoot was provided. Although reciting the five-point test also stated in *Chapman*, the case addressed consideration of the lesser included offense instruction to be considered equivalently for use like the generic theory of defense instruction. Based on evidentiary tests, the instruction would be required if the record justified it. In *Keller*, with two separate burglary intent in one case and found only criminal entry an appropriate right for a lesser included offense in the other charged crime where the defendant passed out under a truck from intoxication. Plain error was applied to reduce to the lesser included offense determined guilt by a citation to *Eatherton I*.

A basic double jeopardy examination was utilized in *Lauthern v. State*, 769 P.2d 350 (Wyo.1989), and in result, the lesser included offense component was disregarded. Neither a statutory nor an evidentiary-cogent analysis or application was provided.

---

**4.** This court made up for the liberal construction in *Eatherton I,* by permitting for retrial in *Eatherton II* the *Corbin* facts involved in the prior acquittal. *Eatherton I* provides no usable precedent for this court's present posture in traditional analysis, although citing the five-point *Chapman* test, it did not involve the particular issue beyond the five-point test, which becomes the waiver by plea or defense supplementation.

If the case is consistent with any rule, it would have to be a strict statutory standard. *See Jeffries*, 430 N.W.2d at 735. Conversely, the dissent in *Lauthern* addressed the cogent application—what the evidence was—which was then considered to be the most consistent standard within historical Wyoming precedent. *Lauthern*, 769 P.2d at 358, Urbigkit, J., dissenting. However, in the immediately preceding case of *Loomer v. State*, 768 P.2d 1042 (Wyo.1989), a statutory application was applied in assessing that a "released unharmed," diminished penalty for kidnapping was not a question of a lesser included offense, but rather a diminished penalty. We said that the "released unharmed" statute is argumentative and not a concern of lesser included offense. The jury verdict was adverse to the defendant and this court affirmed the major offense conviction.

An evidentiary resolution by appellate court conclusion was provided in *Goodwine v. State*, 764 P.2d 680 (Wyo.1988), where we found the absence of evidence of robbery (threatening immediate bodily harm or by intentionally putting "the victim" in fear of immediate bodily injury) and reversed and remanded for re-sentencing on the lesser included offense of larceny. *See also Simonds v. State*, 762 P.2d 1189 (Wyo. 1988) (almost identical with the present case in scope of facts and decision), which differed only in considering burglary as a lesser included offense to aggravated burglary. Again, the usage of *Chapman* for the five-point rule was recognized in *Driskill v. State*, 761 P.2d 980 (Wyo.1988), where a statutory elements test was applied in a factual analysis. No evidence existed upon which a fourth degree sexual assault could be established when aggravated rape (first degree) had unquestionably occurred. The waiver by theory of defense issue was not involved.

*Roose v. State*, 759 P.2d 478 (Wyo.1988) additionally provides no precedent on this subject. *Roose* involved the trial court's discretion without litigant request to give a lesser included offense of burglary instead of the charged aggravated burglary offense claim in jury instruction and verdict.

The five-point rule had again been applied in *Miller v. State*, 755 P.2d 855 (Wyo.1988), but with conviction for aiding and abetting first degree murder. After aiding and abetting second degree murder had been given, there could be no error in refusal of the aiding and abetting manslaughter instruction where the fact was a clearly described murder. *Lessard v. State*, 719 P.2d 227 (Wyo.1986) only provides an inconsistent verdict analysis and consequently no authority on the lesser included offense instruction.

In this march backward, the first Wyoming case that provides some consistency with the present decision is *Seeley v. State*, 715 P.2d 232 (Wyo.1986). *Seeley*, however, provided a statutory construction analysis. The case involved multiple defendants with forceful rape clearly established. *See also Carey v. State*, 715 P.2d 244 (Wyo.), *cert. denied* 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986). In *Seeley*, the defendant asked for a lesser included offense instruction to the charged and convicted offense of first degree rape. The stated defense was non-participation in any rape. The case, in considered examination of the lesser included offense principle, is truly strange. The court first stated the all-or-nothing rule of waiver by defense. Succinctly, it was Seeley's position that he was not guilty of any criminal conduct. If the choice of the jury on the evidence before it is that of guilty of the offense charged or not guilty, a lesser included offense instruction is not required. Our cases hold that a lesser included offense instruction need not be given when it is clear from the evidence that the defendant is either guilty of the charged offense or not guilty.

The trouble with the *Seeley* decisional analysis is that it mixed two totally different subjects: one, the question of the defense as a theory of the case; and the other, a question of what actual evidence is provided. Even if the defendant denies any guilt and the proof is limited to, arguably, a case of lesser character of rape, the court seems to say that the conviction has to be either on the offense for which there is no proof or not guilty and not a lesser

included offense which would be the historical derivation of the lesser included offense instruction. Even more strangely, the court then went on to say:

> A comparison of the statutory language proscribing sexual assault in the second degree and sexual assault in the third degree the manner of committing sexual assault in the second degree and sexual assault in the third degree not only is differentiated under the statutory language, but obviously those offenses can be committed by acts or conduct different from that proscribed by the statute forbidding sexual assault in the first degree. For example, sexual assault in the second degree (§ 6–4–303(a)(i)) can be committed without necessarily applying physical force or forcible confinement as required by § 6–4–302(a)(i) [first degree rape]. Because of this differentiation in the statutory language and the means of committing the offense, every element of the claimed lesser-included offenses of sexual assault in the second degree and sexual assault in the third degree is not necessarily encompassed within the commission of the greater offense of sexual assault in the first degree, and the lesser-included offense instructions are not required.

*Seeley*, 715 P.2d at 238–39 (footnote omitted).

To be charitable, the comment is nonsensical because essentially the proper definition of a lesser included offense is one which lacks some condition which moves the severity of the crime into the more severe character by a further element. As we follow this structure and statement of the law, we will find variant Wyoming cases with a directly contrary result. In *Seeley*, the decision was definite in applying the court determination principle. *Carey*, 715 P.2d 244, decided about the same time was consistent with *Seeley* and inconsistent with nearly any other rule of law on the subject, held that defendant's admission that he had sexual intercourse required him to forfeit a right to a lesser included offense instruction of any less severe rape charge or sexual offense crime. This was the admission of anything, guilty of everything, Wyoming-applied rule. Obviously, this court, as well as the trial court, was upset with *Carey* and *Seeley*, and fit the rules of law into affirmance of guilt and resulting severe sentences. In empirical analysis, Justice Rose was unquestionably correct in his dissent in finding that the refusal of the lesser included offense instruction was reversible error. *Seeley*, 715 P.2d at 243.

This error in adaptation—no separate element in the lesser included offense—is demonstrated by *Krucheck v. State*, 702 P.2d 1267 (Wyo.1985), where the denial of the homicide lesser included offense instruction was approved on the basis of lack of evidence of a differentiating element, namely heat of passion. We then said, in factually eliminating consideration of evidence of heat of passion, that "[n]either accident nor mistake nor deliberate, intentional killing makes out manslaughter." *Id.* at 1269. Au contraire, no one would contend that manslaughter cannot be a lesser included offense for murder charges. *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896).

In a painful yet practical sense, there is not much good that I can find to be said about the *Amin* cases which include the lesser included offense examinations in *Amin v. State*, 695 P.2d 1021 (Wyo.1985) and *Amin v. State*, 694 P.2d 119 (Wyo. 1985). Both cases were recognized in opinion for an all-or-nothing rule argument after major crime conviction. The justification for decision is phrased in a no-evidence concept. The rule stating that the distinguishing element needs to be in dispute is, in itself, undistinguished. Its application in the statement that if the jury believed any of the evidence, it could only acquit is, of course, contrary to practical knowledge and the entire theory of lesser included constitutional case law. The *Amin* cases were presented at trial and on appeal as court fact-finding to affect a denial of a jury consideration. The address to the defense waiver by denial concept with the real principles was stated in *Amin*, 694 P.2d at 123, where the court, in rejecting jury decision, stated:

The trouble with giving lesser included offense instructions that are not justified by the evidence is that 1) the jury becomes confused and may do strange things, and 2) the jury is invited to compromise. This could be an advantage to the defendant, but sometimes it is not. In either event, justice is not served.

\* \* \* \* \* \*

" \* \* \* We can see no reason for submitting the issue of any lesser offense when the evidence conclusively shows the defendant guilty of the highest degree of homicide. While the jury might, if that question were submitted to them, return some verdict of a lesser crime, this does not require the court to invite them to do so by submitting to them a theory of the case not rationally supported by the evidence." *Richmond v. State*, Wyo., 554 P.2d 1217, 1233 (1976).

The *Amin* cases involved a husband and wife charged with a robbery and kidnapping resulting from claimed prostitution. In *Amin*, 694 P.2d 119, the wife asked for a lesser included offense instruction of assault, battery, reckless endangering, and larceny, as well as simple robbery. All were rejected. The husband was charged with aiding and abetting armed robbery and likewise was denied requested lesser included instructions of assault, battery, reckless endangering, or larceny, and ended up with a life sentence on a habitual criminal conviction. *Amin*, 695 P.2d 1021. *See Amin v. State*, 811 P.2d 255, 262 (Wyo. 1991), Urbigkit, C.J., dissenting and *Amin v. State*, 774 P.2d 597 (Wyo.1989).

The *Amin* decisions are supposedly anchored by principles provided in *Richmond v. State*, 554 P.2d 1217 (Wyo.1976). Derivation of rule or delineation of adaptation from *Richmond* to the *Amin* cases is, at best, injudicious. *Richmond* involved felony murder and, generally speaking in most jurisdictions, manslaughter and assault and battery are not lesser included offenses of felony murder. By statutory interpretation, felony murder does not provide a structure where the lesser degrees of homicide, second degree murder, or manslaugh-

ter, and in particular, the non-homicide offenses such as aggravated assault and battery, constitute lesser included offense adaptations. *See Bouwkamp*, 833 P.2d 486 (Wyo.1992), Urbigkit, C.J., dissenting. The authority in this regard is overwhelming and a utilization of *Richmond* to conceptualize the *Amin* decisions is simply nonsensical.

*Johnson v. State*, 695 P.2d 638 (Wyo. 1985) is likewise of no precedential value involving a differentiated question (dual verdicts) for both principal and lesser included charges. In *Jahnke v. State*, 692 P.2d 911 (Wyo.1984), we held that voluntary manslaughter was the lesser included offense of either first or second degree murder in affirming the conviction after the lesser included offense instruction was given. The decision is directly contrary to the later decision of *Krucheck*, 702 P.2d 1267. The actual differentiating cause came in *Krucheck* where the defendant's request for the instruction was denied. In *Jahnke*, the appellate objection came from giving the instruction for which the jury verdict conviction was entered.

In *Eckert v. State*, 680 P.2d 478 (Wyo. 1984), the state tendered a lesser included instruction and defendant objected. When then not given, we found on appeal no error was created in denial of the lesser included manslaughter instruction since the accused was then convicted of second degree murder. Additionally, it was defendant's choice for proceeding on a self-defense theory and in effect he waived a right to the lesser included manslaughter instruction by his initial objection to its utilization. The explicit waiver concept there presented is no authority here in *Warren* where the choice was denied. On this issue, the *Stamper* cases are similar, except the usage in verdict of the lesser included offenses did not become a trial court or appellate issue. *Stamper v. State*, 672 P.2d 106 (Wyo.1983); *Stamper v. State*, 662 P.2d 82 (Wyo.1983).

The case of *Balsley v. State*, 668 P.2d 1324 (Wyo.1983) does not easily fit within any particular concept. The majority used the strict statutory concept, but cited the

*Chapman* test, which is not, of course, that test in application. In special concurrence, two justices discussed *United States v. Whitaker*, 447 F.2d 314 (D.C.Cir.1971) which is intrinsically related to the model penal code, inherent relationship methodology for establishing the lesser included offense instruction. *Balsley*, 668 P.2d at 1329. Consequently, the majority relied on one test, the dissent relied on another, and *Chapman*, which becomes the Wyoming bible, is neither of these since it entertained the cogent approach. *Evanson v. State*, 546 P.2d 412 (Wyo.1976) was cited with approval in *Balsley* by both the majority and dissent. *Evanson* is a model penal code, inherent relationship decision. *See also Fuller v. United States*, 407 F.2d 1199 (D.C.Cir.1967), *cert. denied* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969). *Evanson* teaches that a misfiring gun offense where intentionally done does not provide a factual basis for a lesser included offense of assault with intent to commit manslaughter. Under any of the three concepts, this same result would have occurred. What the defendant intended to do by attempting to shoot was not a manslaughter offense within the facts of the case.

The determinative case cited to support the present decision, *State v. Selig*, 635 P.2d 786 (Wyo.1981), does not properly support the present result either. In the first trial court proceeding in *Selig*, which involved the murder of three hunters, the judge gave a first degree murder instruction and refused second degree murder and voluntary manslaughter instructions. A hung jury resulted. Upon retrial, the judge acceded to prosecutorial request and gave the lesser included offense instruction and the jury responded by an acquittal on all counts. The case came up on appellate consideration on a prosecutorial requested bill of exceptions regarding the lesser included offense instruction *refusal* in the first trial. In a clearly advisory opinion (Justice Thomas dissented for that reason), this court cited *Chapman* in text and the model penal code in footnote. The unremarkable opinion stated that the first trial decision to deny the request was in error

considering the *facts* provided, even though, under the rule of this majority opinion where there, with the defense of self-defense, the trial court would have been correct when the facts of the killings were admitted. Actually, *Selig* is not consistent with this majority opinion, but is realistically consistent with my thesis in this dissent. Extrapolated, however, from the opinion is the double dicta statement considering a hired killing or felony murder:

> A killing resulting from the act of a hired killer is an example wherein the evidence would not permit conviction of lesser offenses. A killing in the perpetration or attempted perpetration of the crimes listed in § 6–4–101(a), W.S.1977 [felony murder] is another. The proposition has been expressed as follows: A trial court need not give a lesser-included offense instruction if the evidence clearly shows that the defendant is either guilty or not guilty of the offense charged * * *. However, such instruction should be given if there is evidence which would allow the jury to rationally find the defendant guilty of the lesser offense.

*Id.* at 791 (footnote omitted).

*Abeyta v. State*, 592 P.2d 705 (Wyo. 1979), a child abuse/death case, is likewise not authority to support this majority. The child died from extreme scalding in hot water and subsequent lack of prompt medical attention. The father, tried on second degree murder, was convicted of manslaughter and appealed the denial of a lesser included offense of child abuse. Since the burns caused the death, the offense was not just "abuse." Cited in *Abeyta* was *Jones v. State*, 580 P.2d 1150 (Wyo.1978) which addressed a factual inquiry of whether the child abuse physical trauma caused the death. That fact was found not to be an issue to justify abuse instruction in a death case. The court stated that abuse could be a lesser included offense to child homicide, but not inevitably, and this again was not the case. The dicta statement taken from *Richmond*, 554 P.2d 1217 and *Oldham v. State*, 534 P.2d 107 (Wyo. 1975) that was all-or-nothing is still not

precedent for logic and reasoning to justify the current decision since it related to *all evidence*, not just the defendant's theory of the case which remained from the nationally discarded (or disregarded) *Chapman* concept. The *Jones* case illustration of assault and battery—intentional homicide situation—is dispositive, where the victim died and a homicide resulted.

In *Martinez v. State*, 511 P.2d 105 (Wyo. 1973), the defendant unsuccessfully complained after conviction for assault and battery with intent to commit rape that the instruction and verdict was improper as a lesser included offense to first degree rape. This court recognized that the defendant was, in essence, lucky, since another lesser included offense permitted a much more severe penalty—fourteen years compared to fifty.

*Moss v. State*, 492 P.2d 1329 (Wyo.1972), involving a contended error in denied lesser included offense instruction, also provides no authority when the appeal was decided on a basic insufficiency of the evidence to convict in any regard and required reversal on that count of the complaint. *Rhodes v. State*, 462 P.2d 722 (Wyo.1969) is different where the reversed trial court decision instructed on a lesser included offense over defendant's objection that justifying evidence did not exist since rape had been charged and, within the doctor's evidence, proved a lesser included instruction of assault with intent was unjustified.

The differentiating sequence found in the pre-*Chapman* cases consistently addressed a no evidence test and not the defendant's theory of defense waiver of right to a lesser included instruction. *Brantley v. State*, 9 Wyo. 102, 61 P. 139 (1900) considered a defendant charged with assault and battery with intent to commit first degree murder and determined that the defendant could be convicted of the lesser included assault with intent to commit either second degree murder or manslaughter, but assault only where the knife wound was six or seven inches long. *Ross*, 93 P. 299 found the defendant charged and convicted of rape of a six-year old child to be factually without justification for acceptance of the requested assault or assault and battery lesser included offense. The actual defense maintained had been indecency, but not rape. The supposition was a character of consent or non-objection and this court concluded that resistance could not be an issue to elevate the consent question. *Cf. Craney*, 798 P.2d 1202. *Gonzales*, 23 P.2d 354 found the defendant charged with assault and battery with intent to commit murder and convicted of assault and battery with intent to commit manslaughter. This court agreed with the trial court that no error existed in denial of a simple assault and battery instruction. The test applied was evidentiary and the case proved was not a simple assault and battery. In the case, no transcript had been provided to examine the evidentiary status, so the broad examination required a general concept analysis of any case of like character. The case determined that the lesser included offense instruction of assault and battery need not be given in *every* aggravated assault case. This is clearly no different than the homicide case where the fourth shot is into the back of the head while the victim is on the ground dead or dying. That would not be involuntary homicide and an involuntary homicide instruction would not be particularly appropriate. *Krucheck*, 702 P.2d 1267. *See also State v. McMahan*, 821 S.W.2d 110 (Mo. App.1991), where a continued course of shooting the victim with a shotgun could not justify an *unintended* assault and harm instruction.

In *Goettina*, 158 P.2d 865, the trial court instructed on first degree murder, second degree murder and manslaughter, and conviction came on the lesser crime. The rule stated in *Goettina* presents the principle which I advance in this dissent. If there is any evidence, a jury resolution should be provided. The only difference in *Goettina* was prosecutorial benefit of higher offenses. In the present case, I consider obligation to instruct for defendant's benefit in addressing the lesser included offense instruction. It is the totality of the evidence—any conflict—jury decision principle found in *Goettina* that this court should have continued to apply but does not.

*Chapman* has no proper affixation within *Goettina* concepts for any evidence and jury decision.

## VI.

### WHAT IS WRONG IN WYOMING ADAPTATION OF THE *CHAPMAN* IDIOMS?

These cases in current Wyoming law seek support for the assertion that a conflicting theory of the case defense denies access to a lesser included offense instruction without regard for other evidence provided by either party by citation of *Chapman*, 615 F.2d 1294. *Chapman* utilizes a half principle to create an infirm and illogical foundation in result. The rule of *Chapman* was that defendant's testimony confined right to a lesser included offense instruction and not all evidence that was provided in the case. As symptomatic of the lack of logic, the court in *Chapman* considered that if the defendant had not testified, the evidence in the case might have warranted giving the requested instruction. No case to cite this wild perception is provided and essentially, with some minor deviations of part statement, no earlier support can be found for what has become in Wyoming waiver by testimony or theory of defense. In the context of the waiver and default propensities of this court, *Cutbirth v. State*, 751 P.2d 1257 (Wyo.1988), this case again reveals an adaptation for criminal law that only those who do not defend are entitled to seek rights to due process in criminal prosecution. Some of our bad acts cases drive toward the same destination. *See, e.g., Gezzi v. State*, 780 P.2d 972 (Wyo.1989), Urbigkit, J., dissenting.

We can easily find where *Chapman* went wrong by consideration of the concurrence/dissent in the case which is illuminating and persuasively stated as supported by precedent which the majority opinion was not:

> If there is some evidence to support a lesser included offense and the defendant requests such a charge, the court has no discretion to refuse the instruction. *United States v. Pino*, 606 F.2d

908, 914 (10th Cir.); 8A *Moore's Federal Practice*, ¶ 31.03. For the trial court in effect to weigh the evidence runs counter to the rule laid down by the Supreme Court in *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 [(1896)]. * * *

> * * * * * *

In *United States v. Comer*, 137 U.S.App.D.C. 214, 219, 421 F.2d 1149, 1154 (D.C.Cir.) the court reminded us that "the jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested." Moreover, this court has previously held that a defendant is entitled to instruction on *any* theory of defense finding support in the evidence and the law, and that a refusal of such instructions is reversible error. *United States v. Swallow*, 511 F.2d 514, 523 (10th Cir.), *cert. denied*, 423 U.S. 845, 96 S.Ct. 82, 46 L.Ed.2d 66. Further, the presence of such evidence requires an instruction on a theory of defense *"[e]ven though the evidence may be weak, insufficient, inconsistent or of doubtful credibility." Id.* at 523.

The majority "observe[s], without deciding," that had defendant not testified, especially to his assertion that the shooting was an accident, "the evidence viewed in the light most favorable to Chapman, vis-a-vis the availability of the instruction, might have warranted the giving of the requested instruction on manslaughter." This statement seems to imply that if the defendant relies primarily on the defense that the shooting was accidental, he cannot also rely on an alternative defense that the shooting was at most manslaughter since it occurred in the "heat of passion." Our opinion in *United States v. Smith*, 521 F.2d 374, 377 (10th Cir.), does give support to this statement on inconsistent positions. I am convinced, however, that the controlling principle as recognized by the Supreme Court in *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40

L.Ed. 980, leaves no room for refusing a lesser included offense charge on such a theory in this case. In *Stevenson, id.* at 322–23, 16 S.Ct. at 842–843, the Court reasoned that the evidence there might support both a position of self-defense, showing that no crime at all was committed, and yet also it could support a finding of shooting under the influence of passion and without malice so as to be manslaughter and not murder.

*Chapman*, 615 F.2d at 1301–02, Holloway, Cir.J., concurring in part and dissenting in part (emphasis in original).

After a careful analysis and detailed examination of precedent in Edward V. Sommer, Comment, *Criminal Procedure—A Trial Court May Refuse to Instruct the Jury on a Lesser Included Offense When Defendant Offers Exculpatory Testimony—United States v. Chapman*, 615 F.2d 1294 (10th Cir.1980), 56 Notre Dame Law. 553, 560 (1981) (emphasis added and footnotes omitted), the author accurately concludes:

> The Tenth Circuit's holding in *United States v. Chapman is an aberration in the law.* It lacks any significant statutory or case law support. The undesirability of permitting a conviction of a lesser crime than is established by the evidence is slight when compared to the risks involved in permitting the trial court to weigh this evidence. Accordingly, it has been held that in close situations, the lesser included offense instruction should be given. In determining what jury instructions are proper, a court's consideration of inconsistencies between the defendant's testimony and other evidence infringes upon the right of the defendant to have a jury consider the evidence against him. Such conduct can also severely inhibit the defendant in the presentation of his defense. In a legal system designed to accord the criminal defendant every reasonable protection in defending himself against government prosecution, these consequences are unacceptable.

The principle of lesser included offense instruction was first considered and exposi-tively stated for federal law in *Stevenson*, 162 U.S. 313, 16 S.Ct. 839, where the murder conviction was reversed for failure to give a lesser included offense instruction of manslaughter and then continues through a line of United States Supreme Court cases with a consistent trend, purpose and ratio decidendi. *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); and most clearly delineated in *Schmuck*, 489 U.S. 705, 109 S.Ct. 1443.

In *Keeble*, 412 U.S. at 208, 93 S.Ct. at 1995 (footnotes omitted), the United States Supreme Court said:

> Although the lesser included offense doctrine developed at common law to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged, it is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater. The Federal Rules of Criminal Procedure deal with lesser included offenses, see Rule 31(c), and the defendant's right to such instruction has been recognized in numerous decisions of this Court. See, *e.g., Sansone v. United States*, 380 U.S. 343, 349 [85 S.Ct. 1004, 1009, 13 L.Ed.2d 882] (1965); *Berra v. United States*, 351 U.S. 131, 134 [76 S.Ct. 685, 687, 100 L.Ed. 1013] (1956); *Stevenson v. United States*, 162 U.S. 313 [16 S.Ct. 839, 40 L.Ed. 980] (1896).

The Wyoming Supreme Court, in adopting the Wyoming Rules of Criminal Procedure, included the specific language of the federal rule in W.R.Cr.P. 31(c) (formerly W.R.Cr.P. 32(c)), which states:

> The defendant may be found guilty of an offense necessarily included in the offense charged or of any attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

This rule leaves no unfilled space to insert a waiver by theory of defense impediment.[5] The basic foundation of the lesser included offense in Wyoming law can be found in *Phillips v. Territory*, 1 Wyo. 82, 84 (Wyo. 1872).

The decision of *Beck*, 447 U.S. 625, 100 S.Ct. 2382 that a state cannot statutorily deny a lesser included offense alternative to capital murder is consistent in constitutional concept. The question advanced in *Beck* was the unavailability by Alabama statute for the jury to consider a lesser included non-capital offense verdict. The United States Supreme Court recognized:

> At common law the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged. This rule originally developed as an aid to the prosecution in cases in which the proof failed to establish some element of the crime charged.

*Id.* at 633, 100 S.Ct. at 2387 (footnote omitted). The United States Supreme Court further stated:

> In the federal courts, it has long been "beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States, supra*, [412 U.S.] at 208 [93 S.Ct. at 1995].

*Id.* 447 U.S. at 635, 100 S.Ct. at 2388. Cited in support of this rule in *Beck* was the Wyoming case of *Jones*, 580 P.2d 1150. The test in *Jones* was presented to be, "[i]n order to justify an assault instruction * * * [murder or homicide in *Jones*, aggravated assault in this present case], there must be some doubt as to whether the act of the accused was the cause of death." *Id.* at 1152. This thesis is consistent with the almost unanimous rule, except for *Chapman*, that *all* of the evidence requires consideration and if evidence of doubt of the principal offense exists yet reasonable proof of the lesser remains, the instruction *must* be given.

> If it is not to be so asserted as matter of law [factor required for principal offense guilt], then it becomes a question of fact in such case, and that question must be answered by the jury.

*Stevenson*, 162 U.S. at 322, 16 S.Ct. at 842. The *Stevenson* court further defined:

> The fact that the evidence might raise an issue as to whether any crime at all was committed is not in the least inconsistent with a claim that it also raised an issue as to whether or not the plaintiff in error was guilty of manslaughter instead of murder. It might be argued to the jury, under both aspects, as an act of self defence and also as one resulting from a sudden passion and without malice. The jury might reject the theory of self defence, as they might say the shot from the pistol of the deceased had already been fired and the plaintiff in error had not been harmed, and, therefore, firing back was unnecessary and was not an act of self defence. But why should the other issue be taken from the jury and they not be permitted to pass upon it as upon a question of fact?

*Id.*

It is strange that we accept the convoluted and confused majority split decision advanced by consideration of only part of the evidence as the rule of *Chapman* and reject the unanimous United States Supreme Court decision in *Stevenson*. In part, it is only explainable by the drive of this court to apply waiver and forfeiture of constitutional rights of the defendant despite his lack of choice or understanding. Essentially this tells us that if you testify, you will not get a theory of defense instruction and you will lose the right to have a lesser included offense jury decision alternative given. This concept is simply incorrect and inconsistent with our concept advanced for usage of the instruction in *Keller*, 771 P.2d 379.

*Chapman*, 615 F.2d 1294, in adaptation to Wyoming precedent, involves two rules,

**5.** The explicit waiver question regarding a statute of limitations to permit prosecution for the lesser included offense has no relevance here where obviously the lesser included offense was available as a possible criminal charge resulting from the evening's fragmented and confused events. *See Spaziano*, 468 U.S. 447, 104 S.Ct. 3154.

e.g., a five element test for identification and application of the lesser offense instruction and, secondly, waiver by theory or evidence presented by the defendant. Actually, the five point test predates *Chapman* in usage (except for Wyoming recitation) and has generally been abandoned. The historical delineation goes back to mutuality arguments and is generally considered to have been identified in *Fuller,* 407 F.2d at 1227. *See United States v. Thompson,* 492 F.2d 359 (8th Cir.1974). *Chapman* was in reality never the name case in Tenth Circuit Court of Appeals law and the five point test has been superseded by a four point test [6] seminally developed in *Fitzgerald v. United States,* 719 F.2d 1069 (10th Cir.1983). *See generally Keeble,* 412 U.S. 205, 93 S.Ct. 1993 and F.R.Cr.P. 31(c).

Consequently, *Chapman,* which was never a generally followed precedent for the stated rule in the Tenth Circuit Court of Appeals, was totally superseded and replaced by the simpler and more direct *Fitzgerald* rule in analysis of definition and application. The second aspect of *Chapman,* the waiver by theory of defense or defendant's testimony, never found support in *any* succeeding Tenth Circuit Court of Appeals case by citation or usage. The difference is obvious—can the defendant rely on all evidence to meet the fourth part of the *Fitzgerald* test—"[a] jury could rationally convict the defendant of the lesser offense and acquit of the greater offense," *Fitzgerald,* 719 F.2d at 1071—or does defendant's principal theory of innocence or defense confine him to only his evidence for right to a lesser included offense instruction? Is only the defendant confined or is also the prosecutor similarly curtailed despite questions of mutuality to the greater offense by the defendant's testimony or approach in theory for defense?

The *Chapman* test, now almost totally confined to Wyoming law, determining that defendant's principal theory produces a waiver of alternative rights, in contradistinction to the principle today, almost unanimously followed in other jurisdictions and certainly recognized by the United States Supreme Court in *Schmuck,* examines the totality of the evidence to establish what the jury might "rationally" conclude. The difference is illustrated by discussion in *United States v. Rafaelito,* 946 F.2d 107 (10th Cir.1991) where the defendant provided no witnesses and the evidentiary examination addressed the state evidence to determine whether a viable factual basis for the lesser included offense instruction existed. Lacking any such evidence, the trial court was determinably correct in not giving the lesser included offense instruction (actually none had been timely requested anyway).

There is another major infirmity in the *Chapman* idiom for lesser included offense instructions. In *Chapman,* the court followed the internal relationship application for determination of the existence of the lesser included offense instruction. It was the same definitional test in *Chapman,* 615 F.2d at 1299 that reappeared in *United States v. Schmuck,* 776 F.2d 1368, 1370 (1985), *vacated* 784 F.2d 846 (7th Cir.1986), *cert. granted* 486 U.S. 1004, 108 S.Ct. 1727, 100 L.Ed.2d 192 (1988), *aff'd* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), where the original panel decision discussed as an internal relationship to "look to the facts as alleged in the indictment and as proven at trial to determine whether the prosecution relied on proof of all the elements of the lesser offense to prove, in turn, guilt of the greater offense." This is a basic *Whitaker* rule. *Whitaker,* 447 F.2d 314. *See also United States v. Cooper,* 812 F.2d 1283 (10th Cir.1987); *United States v. Zang,* 703 F.2d 1186 (10th Cir. 1982), *cert. denied* 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983); and *United*

---

**6.** *See also United States v. Rafaelito,* 946 F.2d 107, 109 (10th Cir.1991); *United States v. Dennison,* 937 F.2d 559, 564 (10th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992); *United States v. Leopard,* 936 F.2d 1138, 1143 (10th Cir.1991); *United States v.* *Haar,* 931 F.2d 1368 (10th Cir.1991); *United States v. Young,* 862 F.2d 815, 820 (10th Cir. 1988); and *United States v. Joe,* 831 F.2d 218, 219 (10th Cir.1987), *cert. denied* 484 U.S. 1072, 108 S.Ct. 1043, 98 L.Ed.2d 1006 (1988).

*States v. Pino,* 606 F.2d 908 (10th Cir. 1979).

Following the panel review, *Schmuck* went to an en banc consideration, *United States v. Schmuck,* 840 F.2d 384 (7th Cir. 1988), *cert. granted* 486 U.S. 1004, 108 S.Ct. 1727, 100 L.Ed.2d 192 (1988), *aff'd* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), where a divided court reversed the panel and followed to the United States Supreme Court in *Schmuck,* 489 U.S. 705, 109 S.Ct. 1443. The United States Supreme Court dispositively rejected for usage in any federal court the inherent relationship test in application of F.R.Cr.P. 31(c) and mandated for future federal court consideration the statutory necessary elements test:

"[I]n all criminal causes the defendant may be found guilty of any offence the commission of which is necessarily included in that with which he is charged in the indictment."

*Schmuck,* 489 U.S. at 719, 109 S.Ct. at 1452 (quoting Act of June 1, 1872, ch. 255, § 9, 17 Stat. 198). Quoting the California case, *People v. Kerrick,* 144 Cal. 46, 47, 77 P. 711, 712 (1904), it was further stated:

"To be 'necessarily included' in the offense charged, the lesser offense must not only be part of the greater in fact, but it must be embraced within the legal definition of the greater as a part thereof."

*Schmuck,* 489 U.S. at 719, 109 S.Ct. at 1452.

Three bases were stated: first, the wording of the rule itself in stating " 'necessarily included' "; second, history of F.R.Cr.P. 31(c) in following the existent common law; and third,

the elements test is far more certain and predictable in its application than the inherent relationship approach. Because the elements approach involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial, the elements approach permits both sides to know in advance what jury instructions will be available and to plan their trial strategies accordingly. The objec-

tive elements approach, moreover, promotes judicial economy by providing a clearer rule of decision and by permitting appellate courts to decide whether jury instructions were wrongly refused without reviewing the entire evidentiary record for nuances of inference. *Id.* at 720–21, 109 S.Ct. at 1452–53.

Additionally, the United States Supreme Court combined in evaluation by footnoting the jury can "rationally find" rule:

Our decision in no way alters the independent prerequisite for a lesser included offense instruction that the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater. *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973).

*Schmuck,* 489 U.S. at 716 n. 8, 109 S.Ct. at 1450 n. 8. This unassailable precedent and present law demonstrates that no proper *Chapman* principle can now be properly applied for Wyoming cases and the evidentiary test of defendant's theory preclusion clearly finds no support in present United States Supreme Court decisions. We miss the key which, for submission of the lesser included offense, is supporting evidence. *State v. Garner,* 330 N.C. 273, 410 S.E.2d 861, 872 (1991).

The aberration designation for *Chapman* provided by Edward V. Sommer, *supra,* 56 Notre Dame Law. 553 and now flaunted in the present case achieves an even more derogatory appellation for what is done. Warren's right is unauthoritatively denied to have a lesser included offense instruction after he was charged with aggravated assault with Hush Puppy shoes since he totally denied guilt. This is emphatically and clearly wrong and, for this case, should be reversible error. A constitutional right to proper instruction was unjustifiably denied.

When the trial court refuses to give an instruction on the lesser included offense, the appellate court must view the evidence supporting the lesser included offense in the light most favorable to the party requesting the instruction. *Keller,* 771 P.2d

379; *State v. Dixon*, 248 Kan. 776, 811 P.2d 1153 (1991). *See also State v. Wilburn*, 249 Kan. 678, 822 P.2d 609 (1991) and *State v. Hunter*, 241 Kan. 629, 740 P.2d 559 (1987). *Hunter* is also particularly helpful for a proper analysis here. That court recognized availability to the defendant of alternative theories and consequent requirement to instruct on any where considering *all* the evidence there was as a factual basis:

> In a criminal action, a trial court must instruct the jury on the law applicable to the theories of all parties where there is supporting evidence. * * * Here, the evidence supported several theories: that Hunter committed some of the crimes, that he aided and abetted the perpetrator in some or all of the crimes, that he acted throughout under compulsion, or that he was an innocent bystander. When considering the refusal of a trial court to give a specific instruction, the evidence must be viewed by the appellate court in the light most favorable to the party requesting the instruction. * * * We must determine whether there was evidence, when viewed in the light most favorable to the defendant, sufficient to require a compulsion instruction.

*Id.* 740 P.2d at 570.

A basic case which is misused and improperly cited as an ancestor for the aberration evidenced in *Chapman* was the per curiam decision of *Womack v. United States*, 336 F.2d 959, 959 (D.C.Cir.1964):

> Appellant was convicted of the crime of robbery, * * * an element of which is the specific intent to rob. Appellant prepared an instruction on intoxication which the trial judge refused to give because intoxication was not the theory of the defense. But a defendant is entitled to an instruction on any issue fairly raised by the evidence, whether or not consistent with the defendant's testimony or the defense trial theory.

Another statement of the initiating principle which disappeared by disconnection in *Chapman* and is now evidenced here is thoughtfully stated in *United States v. Wilson*, 178 F.Supp. 881, 886 (D.D.C.1959):

> It is an elementary principle that the jury is not bound to accept the entire confession. It may accept a part and reject the balance. It may believe the damaging admissions and discredit the exculpatory assertions.

Similarly, we should find here that the jury was entitled to look at the events as something less than the all-or-nothing prosecutorial approach. The foundational case which cites by footnote *Womack* and *Wilson* is *Belton v. United States*, 382 F.2d 150, 155 (D.C.Cir.1967):

> And there may be "some evidence" of a lesser offense even though this depends on an inference of a state of facts that is ascertained by believing defendant as to part of his testimony and prosecution witnesses on the other points in dispute.

Similar rejection of the all-or-nothing approach is evidenced in numerous state court decisions. *See People v. Chamblis*, 395 Mich. 408, 236 N.W.2d 473, 476 (1975), which stated that "[n]either the defense nor the prosecution has the option of precluding the court from carrying out this duty in hopes of forcing an 'all or nothing' verdict." Referenced was "the duty of the trial court to instruct the jury as to the law applicable to the case" where defense counsel's objection to the giving of an instruction on lesser included offense was found to not control. *Id.*

> From Montana, the principle is stated: It is a basic rule in this state that the trial court's instructions must cover every issue or theory having support in the evidence. * * * This Court in *State v. Ostwald* (1979) [180 Mont. 530] 591 P.2d 646, 651, 36 St.Rep. 442, 448, stated that, ". . . a defendant is entitled to instructions on lesser included offenses if *any* evidence exists in the record which would permit the jury to rationally find him guilty of a lesser offense and acquit him of greater."

*State v. Gopher*, 194 Mont. 227, 633 P.2d 1195, 1196 (1981) (emphasis in original). The case is particularly illustrative since it involved an arrest "disagreement" where the defendant kicked a police officer in the leg and was charged with aggravated as-

sault. A requested resisting arrest instruction was denied, and upon conviction for the more severe assault offense, the decision was reversed by the Montana Supreme Court. A basic thesis found in this case and others recognizing the improvidence of the all-or-nothing rule is that its application can be unfair under the possibilities that may occur for either prosecution or defense when requiring a jury verdict which it may not have otherwise made on the all-or-nothing decision, neither choice being actually proved to the individual juror's satisfaction. The lesser included offense instruction permits jury adjustment of decision to its concept of ordered justice.

Consistently with fact finding for ordered justice, the Kansas Supreme Court in *Hunter,* 740 P.2d at 571 made clear that it was the function of the jury as the exclusive finder of fact to determine believability of any theory of the accused's defense. Evidence could come from the defendant or from state witnesses. The Kansas Supreme Court applied the identity of elements test which is identical with the *Schmuck* rule. *Dixon,* 811 P.2d at 1159. Obviously, in application of the identity of elements review, simple assault is a lesser included offense of aggravated assault. Conceptualization of the use of a relatively harmless item of clothing, soft-soled shoes, provides the essential jury examination required here between the lesser and greater assault offenses. This is the circumstance of the use factual test. *People v. Flowers,* 178 A.D.2d 682, 577 N.Y.S.2d 674 (1991). It is also the difference between penitentiary servitude or misdemeanor rehabilitation. Furthermore, this court has in its own decisions agreed in the more thoughtful and clearly defined examination that fact-finding is a jury function. *Keller,* 771 P.2d 379; *see also United States v. Levy,* 703 F.2d 791 (4th Cir.1983).

## VII.

## UTILIZATION OF THE ALL OF THE EVIDENCE TEST

The disingenuous character of the *Chapman,* now Warren, aberration of judicial result can be dissected by examination of a reasonably current case which follows a long line of District of Columbia circuit decisions from which only a portion of the principle was extrapolated for decision in *Chapman.* What has happened is that in *Chapman,* two relevant factors for the legal decision were disconnected leaving only one to be recognized and applied. The examination of all the evidence requirement as a concept in utilization of the lesser included offense instruction was completely ignored.

We find from *United States v. Payne,* 805 F.2d 1062, 1067 (D.C.Cir.1986):

> Under settled law, a criminal defendant is entitled to an instruction on a lesser included offense "if there is any evidence fairly tending to bear upon the lesser included offense 'however weak' that evidence may be." *United States v. Thornton,* 746 F.2d 39, 47 (D.C.Cir.1984), *quoting Belton v. United States,* 382 F.2d 150, 155 (D.C.Cir.1967).

That court then recognized the exception to the general rule requiring the lesser offense instruction to be given as involving two conjunctive factors as equal requirements: a) defense offered is purely exculpatory, and b) no other evidence is provided from which the jury could rationally find the defendant guilty of the lesser offense.

> However, the refusal to give such an instruction is not error in two situations: *first,* where the defenses offered at trial are purely exculpatory, and if believed would lead only to acquittal; and *second,* where the evidence is such that the jury could not rationally find the defendant guilty of the lesser offense. *United States v. Thornton, supra,* 746 F.2d at 47. Both principles are applicable in this case.

*Payne,* 805 F.2d at 1067.

What was done in *Chapman* and now done in this present case was a disregard or rejection of the second factor requiring examination of all of the evidence and rejecting a decision solely based on either defendant's evidence or principle theory of defense, e.g., innocence, "even where the defendant presents a totally exculpatory

defense, the [lesser included offense] instruction should nevertheless be given if the prosecution's evidence provides a 'rational basis' for the jury's finding the defendant guilty of a lesser offense." *Payne*, 805 F.2d at 1067. The dual requirements for approval of the lesser included offense instruction based on evidentiary justification of both the exculpatory defense and consideration of all of the evidence are consistently reflected in well-reasoned cases. The application is enunciated either as looking at the evidence as a whole, *State v. Oldroyd*, 685 P.2d 551 (Utah 1984), or if the evidence presented by the prosecutor provided a rational basis for the lesser included offense. *United States v. Canova*, 638 F.Supp. 1055 (S.D.N.Y. 1986); *People v. Boyd*, 167 Cal.App.3d 36, 212 Cal.Rptr. 873 (1985). *People v. Geiger*, 35 Cal.3d 510, 199 Cal.Rptr. 45, 674 P.2d 1303 (1984) established the specificity of the some evidence test as provided by either the state or the defendant. Inconsistent or alternative theories of defense are available to the charged defendant. *Baden v. State*, 667 P.2d 1275 (Alaska App.1983). The converse where the defendant did not want the lesser included offense but was subsequently convicted of the reduced charge is demonstrated in the homicide case of *United States v. Begay*, 833 F.2d 900 (10th Cir.1987).

The all evidence test is described as the jury "rationally finding" factor for application to determine whether to give the lesser included offense instruction. *United States v. Thornton*, 746 F.2d 39 (D.C.Cir. 1984); *United States v. Beverly*, 562 F.2d 201 (2nd Cir.1977), *cert. denied* 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978); *United States v. Sinclair*, 444 F.2d 888 (D.C.Cir.1971). Unfortunately, the "rationally finding" test may not be consistently extrapolated in fact-finding exercise by the variably disposed jurist. *See Sinclair*, 444 F.2d at 888, 891 (majority and dissent). Since jurists may not necessarily agree as to what is "rational," the province for a jury decision based on disputed facts is clearly established as the justified tenant of American law. "Trial by jury binds inseparably the jury's functions to determine not only innocence or guilt but also the accused's precise crime if guilty." *Id.* at 891, Robinson, Cir.J., dissenting. In *Sinclair*, I would not be inclined to believe that the Martin Luther King assassination riot resulted in a cause for the defendant to accidentally be found inside the looted clothing store. Although that would not be a rational finding, I suspect, however, that the jury was equally competent to come to that rather obvious conclusion. *See also United States v. Comosona*, 848 F.2d 1110 (10th Cir.1988), where throwing a knife at one's grandfather, which resulted in his death, was not a character of misconduct to be prosecuted for involuntary homicide.

A far more rational and precedentially postured decision can currently be found in a case surprisingly similar except non-fatal in assault results. In *Moore*, 599 A.2d 1381, the court considered boot-clad feet a potentially dangerous weapon offense. However, the all or nothing non-lesser included offense instruction constituted reversible error. In citing *Stevenson*, 162 U.S. at 313, 16 S.Ct. 839, the court said that "[w]hatever may have been intended, a defendant's right to a lesser included offense instruction does not depend on a judge's opinion of the weight of the evidence." *Moore*, 599 at at 1384. *See also,* in addressing one aspect of "all or nothing," *People v. Stephens*, 416 Mich. 252, 330 N.W.2d 675 (1982). *Cf. Kelly*, 822 P.2d at 402.

## VIII.

### CONCLUSION

This decision affirming Warren's conviction in non-application of a right to a lesser included offense instruction lacks rationale and reason and fails to follow the Wyoming Rules of Criminal Procedure. In first instance, I would reverse the conviction for failure to give a clearly appropriate instruction. Secondly, we should dump the far-fetched jurisprudential concept of a justified non-instruction by asserted equiva-

lency of final argument.[7] Finally and more permanently, this court should undertake to provide identified, specific and complete rules for our future law to define a lesser included offense and then determine that if fact-finding for application on controverted evidence is required, the jury should decide. It is high time to build the structure of Wyoming law on the lesser included offense instruction based on analyzed theory with defined and dependable rules. *Jeffries*, 430 N.W.2d 728 should lead us that far and even farther to recognize the existence and resolution of this issue in constitutional law and within the Wyoming Rules of Criminal Procedure, including specifically W.R.Cr.P. 31(c) (formerly W.R.Cr.P. 32(c)).

I respectfully dissent.

---

**7.** "The function of the court's charge is to lead the jury in its deliberations and to prevent confusion." *Chubb v. State*, 821 S.W.2d 298, 301 (Tex.App.1991) (citing *Williams v. State*, 547 S.W.2d 18, 20 (Tex.Cr.App.1977)).

In addition to the law journals previously recognized or noted, Dorean Koenig, *supra*, 1975 Det.C.L.Rev. 41; Jerrold H. Barnett, *The Lesser-Included Offense Doctrine: A Present Day Analysis for Practitioners*, 5 Conn.L.Rev. 255 (1972); Edward V. Sommer, Comment, *supra*, 56 Notre Dame Law. 553; Edward G. Mascolo, *supra*, 50 Alb.L.Rev. 263; Christen R. Blair, *supra*, 21 Am.Crim.L.Rev. 445, there are additional extended authorities and resources for information and compiled precedent on the lesser included offense instruction which include: Elaine Edwards Nelson, Comment, *Lesser Included Offenses: When is an Instruction Required?*, 30 Baylor L.Rev. 355 (1978); Stuart S. Yusem, Comment, *The Lesser Included Offense Doctrine in Pennsylvania: Uncertainty in the Courts*, 84 Dick.L.Rev. 125 (1979); Adam H. Kurland, *Prosecuting Ol' Man River: The Fifth Amendment, the Good Faith Defense, and the Non-Testifying Defendant*, 51 U.Pitt.L.Rev. 841 (1990); Laura Anne Cooper, Comment, *Should Juries Be Able to Agree to Disagree? People v. Boettcher and the "Unanimous Acquittal First" Instruction*, 54 Brook.L.Rev. 1027 (1988); David F. Abele, Comment, *Jury Deliberations and the Lesser Included Offense Rule: Getting the Courts Back in Step*, 23 U.C.Davis. L.Rev. 375 (1990); Janis L. Ettinger, *In Search of a Reasoned Ap-* *proach to the Lesser Included Offense*, 50 Brook. L.Rev. 191 (1984); Luke McKissack, Recent Development, *The Included Offense Doctrine in California*, 10 UCLA L.Rev. 870 (1963); Jacquelyn Wheeler Smeltzer, Recent Development, *Criminal Procedure—Recognizing the Jury's Province to Consider the Lesser Included Offense: State v. Ogden*, 58 Or.L.Rev. 572 (1980); Comment, *The Lesser Included Offense Doctrine in Iowa: The Gordian Knot Untied*, 59 Iowa L.Rev. 684 (1974); Michael D. Craig, Note, *Improving Jury Deliberations: A Reconsideration of Lesser Included Offense Instructions*, 16 U.Mich. J.L.Ref. 561 (1983); and John W. Davis, Comment, *The Lesser Included Offense Instruction—Problems With Its Use*, III Land & Water L.Rev. 587 (1968). *See also* David E. Rigney, Jr., Annotation, *Propriety of Lesser-Included-Offense Charge to Jury in Federal Criminal Case-General Principles*, 100 A.L.R.Fed. 481 (1990); Walter W. Jones, Jr., Annotation, *What Constitutes Lesser Offenses "Necessarily Included" in Offense Charged, Under Rule 31(c) of Federal Rules of Criminal Procedure*, 11 A.L.R.Fed. 173 (1972); David E. Rigney, Jr., Annotation, *Propriety of Lesser-Included-Offense Charge to Jury in Federal Homicide Prosecution*, 101 A.L.R.Fed. 615 (1991); Russell G. Donaldson, Annotation, *Lesser-Related State Offense Instructions: Modern Status*, 50 A.L.R.4th 1081 (1986); and Milton Roberts, Annotation, *Propriety of Manslaughter Conviction in Prosecution for Murder, Absent Proof of Necessary Elements of Manslaughter*, 19 A.L.R.4th 861 (1983).